IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| AMERICAN SURGICAL ASSISTANTS, INC., | § § § | |
| Plaintiff, | § § § | |
| v. | § § | CIVIL ACTION NO. H-09-0646 |
| GREAT WEST HEALTHCARE OF TEXAS, INC., | § § § § | |
| Defendant. | § | |

MEMORANDUM AND ORDER

Pending are Defendant Great West Healthcare of Texas, Inc.'s Supplemental Motion to Dismiss (Document No. 24),[1] and Plaintiff American Surgical Assistants, Inc.'s Motion to Take Judicial Notice of United States Senate Report (Document No. 38). After carefully considering the motions, responses, replies, and the applicable law, the Court concludes as follows.

I. Background

A. Factual Allegations

American Surgical Assistants, Inc. ("Plaintiff") is a healthcare provider that provides assistants to help with surgical

---

[1] After Defendant Great West Healthcare of Texas, Inc. filed its original Motion to Dismiss Plaintiff's Complaint Under Rules 9(b) and 12(b)(6) (Document No. 7), Plaintiff American Surgical Assistants, Inc. was granted leave to file its First Amended Complaint. Defendant then filed its Supplemental Motion to Dismiss (Document No. 24), which supercedes its original Motion to Dismiss (Document No. 7).

procedures.  Defendant Great West Healthcare of Texas, Inc. ("Great West") provides administrative services to employee benefit plans.  Great West, or the plans it administers, selects and negotiates reimbursement rates with various healthcare providers to participate "in network."

Plaintiff is a non-participating, or "out of network," provider that has no contracts with Great West and/or the plans it administers.  Great West agrees to reimburse plan enrollees for medical treatment that they receive from non-participating providers at the lesser of (1) the billed charge or (2) the "usual, customary and reasonable" ("UCR," also known as "U&C" and "R&C") rate for the services.  Great West "also contractually promises its members that the UCR rate for a service is the 'prevailing charge' charged by most providers of comparable services in the specific area where the member received the service, with consideration given to the nature and severity of the member's condition, as well as any complications or unusual circumstances that would require additional time, skill, or experience on the part of the ['out of network' provider]."[2]

Plaintiff did not require its patients to pay out-of-pocket for their medical treatment.  Instead, Plaintiff accepted assignments of its patients' benefits and Plaintiff then sought reimbursements directly from Great West, or the plans it

---

[2] Document No. 41 ¶ 94.

administers. Great West allegedly used a database provided by Ingenix, Inc. ("Ingenix") to determine the UCR rate for out-of-network services. Plaintiff alleges that the Ingenix database is flawed and systematically under-values the cost of medical services, which resulted in Great West underpaying Plaintiff for services rendered to enrollees in the plans administered by Great West.

## II.  Discussion

A.  ASA's Motion to Take Judicial Notice of United States Senate Report

ASA asserts that the Court should take judicial notice of the United States Senate Committee on Commerce, Science, and Transportation's report issued June 24, 2009, entitled "Underpayments to Consumers by the Health Insurance Industry."[3] This report discusses how "large health insurance companies have been using two faulty database products owned by Ingenix, Inc., to under-pay millions of valid insurance claims."[4] Federal Rule of Evidence 201 allows the Court to take judicial notice of adjudicative facts, which are facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of

---

[3] Document No. 38, ex.1.

[4] Id., ex. 1 at i.

accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." FED. R. EVID. 201. The Senate Committee report fails to meet either prong of the standard set forth in Rule 201. *See* Am. Surgical Assistants, Inc. v. Principal Life Ins. Co., No. H-09-608 (S.D. Tex. Dec. 1, 2009) (Miller, J.) (denying identical motion in related case).

B.   Great West's Supplemental Motion to Dismiss

   1.   Standard

Rule 12(b)(6) provides for dismissal of an action for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). When a district court reviews the sufficiency of a complaint before it receives any evidence either by affidavit or admission, its task is inevitably a limited one. *See* Scheuer v. Rhodes, 94 S. Ct. 1683, 1686 (1974). The issue is not whether the plaintiff ultimately will prevail, but whether the plaintiff is entitled to offer evidence to support the claims. Id.

In considering a motion to dismiss under Rule 12(b)(6), the district court must construe the allegations in the complaint favorably to the pleader and must accept as true all well-pleaded facts in the complaint. *See* Lowrey v. Tex. A&M Univ. Sys., 117 F.3d 242, 247 (5th Cir. 1997). To survive dismissal, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 127 S. Ct.

1955, 1974 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).  While a complaint "does not need detailed factual allegations . . . [the] allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)."  Twombly, 127 S. Ct. at 1964-65 (citations and internal footnote omitted).

    2.   <u>Claims at Issue</u>

In its First Amended Complaint, Plaintiff asserted that Great West has violated ERISA, the Racketeer Influenced and Corrupt Organizations Act (RICO"), the Sherman Antitrust Act, and a variety of Texas statutes and common law.  Plaintiff withdrew most of these claims in its Response to Great West's Supplemental Motion to Dismiss, leaving only the following claims:

(1) An ERISA § 502(a)(1)(B) claim for denial of benefits;

(2) An ERISA § 502(a)(3) claim for breach of fiduciary duty;

(3) A claim under the Sherman Antitrust Act; and

(4) Breach of implied contract and Texas Insurance Code claims, which Plaintiff alleges with respect to its patients who are not covered by ERISA benefit plans, if any.

Great West maintains that these remaining claims should be dismissed under Rule 12(b)(6).

### 3.   ERISA Section 502(a)(1)(B) Claim

Great West asserts that Plaintiff's section 502(a)(1)(B) claim should be dismissed because Plaintiff has not alleged that it exhausted its administrative remedies and because Great West is not a proper ERISA defendant.  Generally, a plaintiff must exhaust all administrative remedies available under an ERISA plan prior to bringing an action for denial of benefits.  <u>Bourgeois v. Pension Plan for Employees of Santa Fe Int'l Corps.</u>, 215 F.3d 475, 479 (5th Cir. 2000).  Exhaustion of administrative remedies, however, is not a jurisdictional bar; it is an affirmative defense.  *See* <u>Crowell v. Shell Oil Co.</u>, 541 F.3d 295, 308-09 (5th Cir. 2008).  A complaint is not subject to dismissal under Rule 12(b)(6) because it fails to allege facts disproving a possible affirmative defense.  <u>Hall v. Hodgkins</u>, 305 F. Appx. 224, 228 n. 1 (5th Cir. 2008).  An exception to this rule may apply if the plaintiff has alleged facts plainly indicating that an affirmative defense does apply, but Plaintiff has not done so here.  Great West's Motion to Dismiss Plaintiff's § 502(a)(1)(B) claim because Plaintiff did not allege exhaustion of administrative remedies will therefore be denied.

Great West also argues that it is not a proper defendant for Plaintiff's § 502(a)(1)(B) claim, contending that the Fifth Circuit

requires that, "in general, § 502(a)(1)(B) claims may be brought only against a benefits plan." Document No. 25 at 7. The "narrow exception" to this rule, Great West states, is to permit claims against "an **employer** that 'indisputably' made the decision to deny an employee's benefits under a plan that had 'no meaningful existence separate' from that employer." Document No. 29 at 1-2 (emphasis in original) (citing in Musmeci v. Schwegmann Giant Super Mkts., 332 F.3d 339, 349 (5th Cir. 2003)). In Musmeci the Fifth Circuit recognized that an employer who was both a plan sponsor and plan administrator that controlled the final benefit determination for the plan was a proper defendant under § 502(a)(1)(B). Musmeci, 332 F.3d at 349-50. It did not, however, establish a "general rule" that the plan was the *only* proper defendant or, by implication, any "narrow exception" to such rule. *See generally* id.

District court cases go both ways on whether the plan is the only proper defendant. Judge Barbara Lynn in Bernstein v. Citigroup, Inc., No. 3:06-CV-209M, 2006 WL 2329385, at *3-7 (N.D. Tex. July 5, 2006) in a very persuasive opinion thoroughly analyzed the case law and concluded that while an employee benefit plan may be sued as an entity as authorized by § 1132(d), "§§ 1332(a)(1)(B) and 1132(d), taken together, . . . do not support the conclusion that the plan is the *only* proper defendant under that section." Id. at *5. Hence, Judge Lynn denied a motion to dismiss a

7

§ 1332(a)(1)(B) claim against a non-plan defendant that was not listed in the plan as plan administrator, because the defendant did not show that it did not control the administration of the plan. "In light of [cited cases], the plain text of ERISA, and the abundance of circuit authority authorizing such suits, the Court holds that a claim under § 1132(a)(1)(B) is not *per se* limited to plan defendants." Id. at *7.  *See also* Hawk v. Century Tel. Enters., No. 05-0936, 2009 WL 775394, at *6, n.3 (W.D. La. Mar. 23, 2009) (Walters, J.) ("Prudential, the insurer of the Plan, maintains a fiduciary relationship with the Plan, [and is] properly before this Court."); Laura Franklin v. AT&T Corp., No. 3:08-CV-103 1M, 2008 WL 5156687, *2 (N.D. Tex. Dec. 9, 2008) (Lynn, J.) (denying 12(b)(6) motion because purported "claims administrator" could be a proper defendant under § 502(a)(1)(B) if it controlled the administration of the plan); Pippin v. Broadspire Servs., Inc., No. Civ.A. 05-2125, 2006 WL 2588009, at *2-3 (W.D. La. Sept. 8, 2006) (Trimble, J.) (refusing to dismiss the third-party claims administrator under Rule 12(b)(6) because, under the Fifth Circuit's reasoning in Musmeci, "an examination of [the third-party administrator's] role in denying [the plaintiff's] benefits claim is essential in order to determine whether it is a proper party").

Here, Plaintiff asserts in its First Amended Complaint that "[u]nder the terms of its health plans, GREAT WEST administers benefits and is a fiduciary," and "GREAT WEST makes the final

8

decision on benefit appeals and/or has been given authority, responsibility and discretion . . . with regard to benefits." Document No. 14 ¶¶ 160-61. Accepting these allegations as true, the Court denies Great West's motion to dismiss Plaintiff's § 502(a)(1)(B) claim because Great West has not shown that Plaintiff has not stated a claim upon which relief can be granted under that subsection. *See, e.g.*, Pippin v. Broadspire Servs., Inc., No. Civ. A. 05-2125, 2006 WL 2588009, at #8 (W.D. La. Sept. 8, 2006) ("Indeed, we must accept Pippin's assertion that Broadspire had the authority to determine the final review of her claim for disability benefits. As Pippin contends that Broadspire maintains discretionary authority over the plan, Broadspire is a fiduciary to the plan, and therefore was properly named as a defendant.").

### 4. ERISA § 502(a)(3) Claim

Plaintiff alleges in Count IX of its First Amended Complaint that Great West breached a fiduciary duty to Plaintiff under ERISA § 502(a)(3) when it engaged in self-dealing by using the Ingenix database to underpay claims. Plaintiff claims standing on this claim as the assignee "of their patients' out-of-network benefits claims to GREAT WEST," and also asserts that it has standing to pursue the claims "on its own behalf as a party to an implied contract/*quantum meruit* legal theory." First Amended Complaint,

9

¶¶ 178, 179.  Plaintiff concludes Count IX by alleging that is "entitled to assert a claim for relief for GREAT WEST's violation of its fiduciary duties . . ., including declaratory relief, and may seek removal of any fiduciary that breached its duties."  Id. at ¶ 185.

Defendant argues that Plaintiff's § 502(a)(3) claim has effectively been disemboweled by Plaintiff's Response to Defendant's Motion to Dismiss in which it agreed to dismiss its claim for declaratory relief and also agreed to dismiss its request to remove Great West as a plan fiduciary.  See Response, pp. 11, 14.  Hence, argues Defendant, Plaintiff seeks no remedy for the alleged § 502(a)(3) claim and it should therefore be dismissed. Plaintiff responds in its sur-reply that an ERISA beneficiary can require an insurance company that breached its ERISA fiduciary duties to disgorge the premiums that it received, implying that its broad claim for relief includes a claim for Great West to disgorge the premiums it received.  Sur-Reply at pp. 2, 3.  Plaintiff's First Amended Complaint itself, however, does not seek such relief or allege a basis for it.  Its conclusory statements without reference to any factual context for the disgorgement of premiums, which are never identified, fail to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6); see Ashcroft v. Iqbal, 129 S. Ct. 1937 (2009).

Moreover, to the extent that Plaintiff is contending it is the assignee of its patients' fiduciary duty breach claims based on Defendant's use of the Ingenix database, to plead a plausible case under the holdings of Twomley and Iqbal, Plaintiff must plead that its patients expressly and knowingly assigned their rights to sue for breach of fiduciary duty. See Texas Life v. Gaylord Entertainment Co., 105 F.3d 210 (5th Cir. 1997). Fiduciary duty breach claims "are not assigned by implication or by operation of law. Instead, only an express and knowing assignment of an ERISA fiduciary breach claim is valid." Id. at 218; *see also* Via Christi Reg'l Med. Ctr., Inc. v. Blue Cross & Blue Shield of Kan., No. 04-1253, 2006 WL 3469544, at *7 (D. Kan. Nov. 30, 2006) ("[T]he assignment conveyed to Via Christi any interest or title the Arnolds had in benefits payable under an insurance policy, but there is no evidence of an intent to convey the right to sue for a lapse in insurance coverage caused by a breach of fiduciary duty.") Plaintiff has failed to state a claim under § 502(a)(3) upon which relief can be granted.

5.   Sherman Antitrust Act

Great West moves to dismiss Plaintiff's antitrust claim on four grounds: (1) Plaintiff has not alleged it suffered an "antitrust injury"; (2) Plaintiff has not alleged its patients suffered an "antitrust injury"; (3) Plaintiff has not pleaded facts

11

showing a plausible agreement to restrain trade; and (4) Plaintiff has not pleaded facts showing that any such agreement was unreasonable. Plaintiff in its Response to Great West's Motion to Dismiss the Sherman Antitrust Act Claim, asks on three separate occasions to replead with more specific facts if necessary to state the antitrust claim.

Ferreting out the substance of Plaintiff's antitrust claim from its prolix 51 page First Amended Complaint would be a daunting task. As observed above, Plaintiff in its Response has now withdrawn most of the separate theories for recovery it originally pled, to wit: all RICO claims; an ERISA claim for benefits arising before January 5, 2005; an ERISA claim for declaratory relief; an ERISA claim to remove Great West as a plan fiduciary; state law claims for negligence and negligent misrepresentations; a state law claim for *quantum meruit* damages; a state law claim for breach of an implied contract of good faith and fair dealing; and a claim under the Texas Theft Liability Act.

Although Count Twelve is entitled "Violation of Section 1 of the Sherman Act" and conclusorily alleges that Great West "along with Ingenix and its competitors, have combined, conspired and/or agreed with one another, and/or with unnamed co-conspirators, to unreasonably restrain trade in violation of Section One of the Sherman Act," etc., a plain statement of facts sufficient to state a claim for relief that is plausible on its face is not set forth

in a coherent manner. Instead, Plaintiff pleads at different places over more than 30 pages preceding Count Twelve a variety of facts, at times stating that they constitute violations of everything from the Texas Insurance Code to ERISA to RICO to the Sherman Act, and to other state and federal violations. Many of these allegations are wedged between "Count Five: Violation of the Texas Theft Liability Act," at page 13, and now withdrawn by Plaintiff, and "Count Seven: Breach of Plan Provisions for Benefits in Violation of ERISA § 502(a)(1)(B)," at page 30, of the First Amended Complaint. There is no "Count Six" to be found between Counts Five and Seven, but instead a plethora of sundry allegations to which are tagged a variety of legal theories for recovery.

Thus, Plaintiff's effort to plead an antitrust claim falls short of the requirements of Fed. R. Civ. P. 8(a)(2) ("a pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief") and Rule 8(d)(1) ("[e]ach allegation must be simple, concise, and direct). *See also*, Young v. Centerville Clinic, Inc., No. 09-325, 2009 WL 2448003, at *1-2 (W. D. Pa., August 10, 2009). Moreover, the implications of Rule 8 require more than allegations of mere legal conclusions resting on prior allegations; sufficient facts in context to set forth a plausible claim must be pled. *See* Ashcroft v. Iqbal, 129 S. Ct. 1937, 1953 (2009). Thus, in an antitrust case, where plaintiff, as here, never alleges an actual,

direct agreement between Great West and other alleged conspirators who obtained data from Ingenix, a factual predicate for conspiracy must be set out that consists of more than allegations that several companies all of whom were engaged in the same kind of insurance claims business, each went to a common source to obtain data on the usual, customary, and reasonable charges for certain services provided by health care providers, or other such natural, parallel conduct that does not in and of itself support a plausible antitrust conspiracy.  See Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1971 (2007).  Besides alleging contextual facts for a plausible claim of an agreement or conspiracy, additional matters must be plainly and simply alleged with sufficient factual context to show the alleged agreement has an anticompetitive effect.  See N. Tex. Specialty Physicians v. F.T.C., 528 F.3d 346, 358-63 (5th Cir. 2008) (explaining the *per se* and the rule of reason legal frameworks).  Plaintiff's convoluted First Amended Complaint fails to meet the requirements of Rule 8 for an antitrust claim, and Plaintiff appropriately has requested opportunity to replead.

　　　6.　Texas Law Claims

　　Plaintiff has withdrawn all Texas law claims except for its claims that Great West (1) breached its implied-in-fact contract

with Plaintiff and (2) violated the Texas Insurance Code.[5] Plaintiff states that these two remaining state law claims relate only to "its patients who are not members of ERISA plans." Document No. 26 at 7.  At the Scheduling Conference, however, Plaintiff's counsel stated that all of the plans that he had analyzed are governed by ERISA.  If Plaintiff has found that none of its patients has a non-ERISA plan, then Plaintiff has no state law claims.  Given Plaintiff's acknowledgment that at the time of filing suit it had no knowledge of any non-ERISA plans upon which to assert state law claims, the Court will dismiss the remaining state law claims without prejudice to Plaintiff refiling same, if it can do so in good faith consistent with the requirements of Fed. R. Civ. P. 11(b), after having made reasonable inquiry and investigation of the facts, which Plaintiff by now should certainly have done.

### III. Order

For the foregoing reasons, it is

---

[5] In its Response to Great West's Amended Motion to Dismiss, Plaintiff asserts that it also "is bringing its patients' breach-of-contract claims as derivative actions" as the assignee of those claims.  Document No. 26 at 8.  In the First Amended Complaint, Plaintiff only asserts that its breach of contract claim is based on its "implied contract/*quantum meruit*" theory.  Plaintiff cannot amend its First Amended Complaint by its Response in opposition to Great West's motion to dismiss.  *In re* Baker Hughes Sec. Litig., 136 F.Supp. 2d 630, 646 (S.D. Tex. 2001).

ORDERED that Plaintiff American Surgical Assistants, Inc.'s Motion to Take Judicial Notice of United States Senate Report (Document No. 38) is DENIED. It is further

ORDERED that Great West Healthcare of Texas, Inc.'s Supplemental Motion to Dismiss (Document No. 24) is DENIED with respect to Plaintiff's ERISA Section 502(a)(1)(B) claim for denial of benefits, and is GRANTED with respect to Plaintiff's claims under ERISA Section 502(a)(3), the Sherman Antitrust Act, the Texas Insurance Code, and based on breach of implied-in-fact contracts, all without prejudice to Plaintiff, within twenty-one (21) days after the date of this Order, filing a more definite statement in the form of a Second Amended Complaint, if it can file such consistent with the requirements of Fed. R. Civ. P. 11(b), alleging any of the remaining four specific claims that Plaintiff did not withdraw in its Response to Great West's Motion to Dismiss. Claims that Plaintiff has withdrawn shall not be repled in any amended complaint.

The Clerk will enter this Order, providing a correct copy to all parties of record.

SIGNED at Houston, Texas, on this 17th day of February, 2010.

_____
EWING WERLEIN, JR.
UNITED STATES DISTRICT JUDGE